[No. C053632. Third Dist. May 22, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO JAMES GOLDE, Defendant and Appellant.

## COUNSEL

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Janis Shank McLean and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In this case, we hold:

1. Substantial evidence supports defendant's conviction for violation of Penal Code section 245, subdivision (a)(1) (felony assault)[1];

2. No substantial evidence supports the trial court's finding that defendant suffered a prior serious felony "strike" conviction for violation of section 246.3 (negligent discharge of firearm), because no evidence in the record shows defendant personally used a firearm;

3. The trial court did not err in failing to instruct the jury on the elements of simple assault (§ 240), as a lesser included offense, because no substantial evidence supported such an instruction;

4. The trial court did not err by giving the following jury instructions: Judicial Council of California Criminal Jury Instructions (2006–2007) CALCRIM Nos. 101, 102, 104, 200, 220, 223, 225, 226, 300, 302, 315, 316, 318, 333, 355, and 875.

---

[1] Undesignated statutory references are to the Penal Code.

Section 245, subdivision (a)(1), states: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

Defendant Mario James Golde was convicted of assault by means of force likely to produce great bodily injury or with a deadly weapon, a car (§ 245, subd. (a)(1)), with a prior serious felony conviction (§§ 667, subds. (b)–(i), 1170.12). He appeals, contending (1) the evidence is insufficient to support the assault conviction and the finding that defendant's prior conviction was a serious felony; (2) the trial court erroneously failed to instruct on a lesser included offense; and (3) numerous CALCRIM jury instructions are defective. We shall vacate the finding of the prior serious felony conviction and remand to allow the prosecution the opportunity for retrial of that one issue. We shall otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with (Count One) kidnapping (§ 207); (Count Two) false imprisonment (§ 236); (Count Three) domestic violence (§ 273.5); (Count Four) vehicle theft (Veh. Code, § 10851); (Count Five) violation of a domestic relations court order (§ 273.6); and (Counts Six & Seven) two counts of assault by means of force likely to produce great bodily injury or with a deadly weapon and instrument (car). It was alleged defendant had a prior serious felony (§§ 667, 1170.12, subd. (b)), i.e., a 1990 conviction for discharging a firearm with gross negligence (§ 246.3). Count Three, domestic violence, was dismissed at the prosecution's request before trial.

Evidence adduced at trial included the following: The victim, Hilda Nieves, testified she was married to, but was separated, from another man. She was in an intimate relationship with defendant and was living with him. The victim testified she started using a lot of crystal methamphetamine and heroin in 2004 and started hallucinating and falsely accusing defendant of hitting her. On August 28, 2005, they consumed methamphetamine and heroin. The victim had also consumed some of the same drugs on her own, had not slept for two days, and was so "high" she was "hearing things," like music coming out of the bathroom fan. Another couple came to visit. The victim became jealous because she knew the woman was attracted to defendant. When the other couple left, the victim accused defendant of cheating and swore revenge. She was mad and tried to leave, but defendant took her car keys, chased her when she tried to run, and persuaded her to get into her car with defendant driving.

According to the victim's trial testimony (which conflicted with her statement to police but was consistent with her testimony at the preliminary hearing), her accusations against defendant were false. The victim testified

that, as defendant drove the car, she hit him and said she would rather see him locked up than cheating on her. She wanted to get him in trouble. When defendant slowed the car at a four-way intersection, the victim jumped out of the car yelling, "He's going to kill me." She said the abrasions she sustained that day were caused when she jumped out of the car and hit the gravel. Defendant made a U-turn, stopped the car about 15 feet away from her, and chased her on foot and asked her to get back in the car. The victim told a man at a fire station that defendant was trying to run her over. At trial, the victim said this was a lie she told in an attempt to get defendant in trouble.

A firefighter testified he heard a female screaming, looked outside and saw a car screeching its tires in acceleration at about 15 miles per hour, trying to hit the female.[2] The female ran toward the firefighter, screaming several times, "He's trying to kill me." Inside the station, she said the driver forced her into the car and was going to take her to a remote location to kill her. The firefighter observed abrasions to her arm, shoulder, hip and buttocks.

Paramedics took the victim to the hospital, where she told police that defendant forced her into the car, threatened her, and slapped her. As defendant slowed the car at an intersection, she unlatched her seatbelt. He accelerated the car, and she jumped out. Defendant drove the car in reverse, hit her once, then turned the car around and tried to hit her again. The victim gave a similar account to a deputy, who observed the victim was very upset and afraid.

From the hospital, the victim phoned her husband and said defendant wanted to take her out to the country to kill her. The husband took the victim home and later drove her to see a police detective. The victim gave her husband a handwritten note with defendant's physical description "[i]n case something happened to her."

On September 7, 2005, more than a week after the incident, the victim gave a tape-recorded statement to a police detective, in which the victim was more timid but did not recant her original account. The victim testified she was afraid to recant because the detective said not to let the detective down.

---

[2] The firefighter also testified the female bounced off the front quarter panel about 10 feet but did not fall to the ground. The prosecutor used this evidence of the car actually hitting the victim for the assault charged in Count Seven, but the jury acquitted defendant on Count Seven. We disagree with defendant's assertion that the prosecutor argued to the jury that one count of assault related to the car moving forward, and the other count related to the car moving backward. We disagree with the People's assertion that the Count Six conviction related to the victim's being struck by the car.

In September 2005, the victim resumed living with defendant. She wrote a note in late 2005 asking police not to arrest defendant at his residence. When defendant was arrested, in the victim's presence, she did not recant because she was afraid.

Beginning at defendant's arraignment, the victim recanted and thereafter told police, the prosecution, and the court that she had lied, and the accusations against defendant were false. She claimed the prosecutor originally assigned to the case refused to listen to her recantation. The prosecutor originally assigned to the case testified he told her he could not discuss the facts with her (a policy designed to avoid having the prosecutor become a witness), but she should tell the truth. He also testified the victim said she wanted defendant out of custody, and it is common for domestic violence victims to recant.

In her testimony in this trial, the victim acknowledged she made prior reports concerning defendant's violence and obtained restraining orders in 2004 and 2005. In her testimony in this trial, the victim testified her prior reports were based on falsehoods.

Police officers who dealt with the prior reports testified in this trial that on those prior occasions the victim was upset and afraid and bore physical injuries.

The incident which is the subject of this prosecution was witnessed by persons inside a shop at the intersection. They heard tires screeching, saw the car come to a halt, and a frantic female outside the car screamed, "Help me, help me. He's going to kill me." The female jumped up from the ground a couple of feet from the car. The car moved toward her. She ran, trying to avoid the moving car. The driver was trying to run her over. One of the witnesses saw the driver accelerate toward the female at least three times. The car maneuvered toward her as she tried to move out of its way. When she ran to the fire station, the driver stopped the car and got out, looking enraged. A witness told the driver to leave, and he did.

Defendant did not testify, but several of his friends and relatives testified that the victim has a drug problem and a history of self-injury and false accusations.

The jury found defendant guilty only as to one of the two assault counts, Count Six, for assault by means of force likely to produce great bodily injury or with a deadly weapon (car). The jury found defendant not guilty on the other counts, except Count Three, domestic violence (which was dismissed before trial) and Count Five, violating a domestic relations court order, for which the jury was deadlocked and a mistrial was declared.

The trial court found true the prior serious felony "strike" allegation and sentenced defendant to six years in prison (the midterm of three years, doubled).

## DISCUSSION

### I. *Substantial Evidence*

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)

### A. *Assault*

Defendant argues the evidence is insufficient to support the assault conviction because no reasonable juror could conclude under the facts presented that defendant intended for his vehicle to strike the victim. We shall explain why the contention is without merit.

The mental element for the assault charge is that "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 [111 Cal.Rptr.2d 114, 29 P.3d 197].)[3] "The mens rea [for assault] is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery. Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm. [Citation.] The evidence must only demonstrate that the defendant willfully or purposefully attempted a 'violent injury' or 'the least touching,' i.e., 'any wrongful act committed by means of physical force against the person of another.' [Citation.] In other words, '[t]he use of the described force

---

[3] In *People v. Wright* (2002) 100 Cal.App.4th 703 [123 Cal.Rptr.2d 494], we disagreed with *People v. Williams, supra,* 26 Cal.4th 779, but followed it as a binding precedent. (*Wright, supra,* 100 Cal.App.4th at pp. 706, 713–724.)

is what counts, not the intent with which same is employed.' [Citation.] Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state. [Citation.]" (*People v. Colantuono* (1994) 7 Cal.4th 206, 214–215 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

Thus, there is no merit to defendant's argument that if he wanted to hit the victim, he could have hit her, and therefore the fact that he did not hit her means he had no intent to hit her. Under the aforementioned cases of our Supreme Court, defendant did not have to intend to hit the victim to be guilty of assault.

Three witnesses testified to their observations of defendant's driving. The firefighter saw the car screeching its tires in acceleration toward the victim at about 15 miles per hour and saw the victim bounce off the front panel of the car. Another witness saw the car drive toward the victim as she ran back and forth in an apparent attempt to avoid the moving car. The driver even made a U-turn and ran the car in reverse to come back to her. A third witness saw the driver accelerate toward the victim three or four times, saw the driver maneuver the car and pursue the victim as she moved out of the way, and saw the driver emerge from the car looking enraged.

This evidence constitutes substantial evidence supporting the conviction. The evidence shows defendant "willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery." (*People v. Colantuono, supra*, 7 Cal.4th at p. 214.)

Defendant argues he had to maneuver the large vehicle back and forth within the small intersection trying to get to the victim so he could calm her down and get her back into the vehicle. This is merely an argument for a different interpretation of the evidence, an argument which misperceives our standard of review.

Defendant also argues that, to the extent the witnesses concluded he was trying to hit the victim with the car, their conclusions were based on speculation fueled by the victim's cries ("He's trying to kill me"), which were recanted by the victim. However, we do not rely on the witnesses' conclusions that defendant was trying to hit the victim, but rather on their observations of the car's movements.

Defendant says the jury did not believe the victim's initial statements, as shown by their acquittal of defendant on the other counts. We first note that, contrary to defendant's suggestion, the jury did not conclude defendant was

innocent of the domestic violence charge (which was dismissed before trial) or the charge of violating a court order (on which the jury deadlocked). The jury did find defendant not guilty of kidnapping, false imprisonment, vehicle theft, and one of the two assault charges (which was predicated on evidence that the car actually hit the victim, fn. 2, *ante*). However, contrary to defendant's view, his acquittal on those charges does not render the evidence insufficient on the assault charge on which defendant was convicted and for which there was testimony of independent witnesses.

Defendant cites *People v. Cotton* (1980) 113 Cal.App.3d 294 [169 Cal.Rptr. 814], and *People v. Jones* (1981) 123 Cal.App.3d 83 [176 Cal.Rptr. 398], neither of which helps him here. *Cotton* held a trial court erred in concluding that reckless driving (Veh. Code, § 23104) *per se* generated a transferable intent to commit a battery via automobile (§ 245, subd. (a)). (*Cotton, supra*, 113 Cal.App.3d at pp. 301–307.) In *Jones*, there was no evidence to show or imply that the defendant drove his vehicle at the other car involved in the collision. (*Jones, supra*, 123 Cal.App.3d at p. 96.) Here, there was evidence that defendant drove the car toward the victim and repositioned the car toward the victim as she tried to move out of its way.

■ We conclude substantial evidence supports the conviction on the Count Six assault charge.

### B. *Prior Serious Felony Conviction*

Defendant contends the evidence was insufficient for the trial court to conclude that defendant's prior conviction in 1990 for negligent discharge of a firearm (§ 246.3)[4] was a qualifying strike as a prior "serious felony" under sections 667 and 1170.12. As we shall explain, the contention has merit, because defendant merely admitted the prior conviction, and there was no admission or evidence that his prior conviction was based on *personal* discharge of a firearm, as opposed to aider and abettor culpability, so as to qualify as a "serious felony."

#### 1. *Background*

The information alleged defendant was convicted in 1990 of discharge of a firearm with gross negligence (§ 246.3), a serious felony under sections 667, subdivision (d), and 1170.12, subdivision (b).

---

[4] Section 246.3, subdivision (a), provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison."

When it came time for the bifurcated trial of the prior conviction, defense counsel told the trial court: "[Defense counsel]: . . . I talked with [defendant] about it before trial and just a few moments ago. [¶] I made the commitment, based upon those conversations[,] to [the prosecutor] and to the court at the beginning of trial, that upon the completion of the evidence, there would be an admission to the priors and we're not challenging those so that's what we are prepared to do."

Although defense counsel referred to "priors," only one prior conviction is at issue.

The prosecutor submitted certified copies of the prior conviction and defendant's rap sheet, showing defendant was convicted by guilty plea in 1990 of a felony violation of section 246.3, "GROSS NEG DISCHARGE/FIREARM," with no enhancements, and was committed to the California Youth Authority for a midterm of two years.

The reporter's transcript then shows:

"THE COURT: Mr. Golde [defendant], is it correct that you acknowledge the prior conviction from June 12th, 1990?

"THE DEFENDANT: Yes.

"THE COURT: It's reflected in both exhibits 28 and 29. [¶] Okay. The court will make a finding that [the] People have proven the prior as indicated on the record."

Defendant later moved to "strike the prior strike" in the interests of justice, for reasons unrelated to sufficiency of the evidence. The trial court denied the motion.

2. *Analysis*

■ To qualify as a "strike," the prior conviction must be a "violent felony" as defined in section 667.5, subdivision (c), or a "serious felony" as defined in section 1192.7. (§ 667, subd. (d); § 1170.12, subd. (b).) Section 246.3 is not a felony specifically listed in section 667.5 or section 1192.7.[5] Section 246.3 can be used as a strike only if the defendant personally used the firearm. (§ 1192.7, subd. (c)(8) ["any felony in which the defendant personally uses a firearm"]; § 1192.7, subd. (c)(23) ["any felony in which the

---

[5] In contrast, a section 246 conviction for discharge of a firearm at an inhabited building, vehicle, or aircraft *is* a serious felony under section 1192.7, subdivision (c)(33).

defendant personally used a dangerous or deadly weapon"]; see also *People v. Bautista* (2005) 125 Cal.App.4th 646, 654–655 [22 Cal.Rptr.3d 845] [it was error not to submit to the trier of fact the question whether the defendant's prior § 246.3 conviction included personal use of the firearm by the defendant so as to qualify for a § 667 enhancement]; *People v. Best* (1997) 56 Cal.App.4th 41, 43 [64 Cal.Rptr.2d 809] [since assault with a deadly weapon constituted a serious felony only if the defendant personally used the deadly weapon, there must be proof of the fact of the conviction and proof that the defendant personally used the deadly weapon]; *People v. Leslie* (1996) 47 Cal.App.4th 198, 201–205 [54 Cal.Rptr.2d 545] [prior § 246.3 conviction qualified as a strike where the defendant at the time of the no contest plea to the current offense admitted he personally used the firearm in the prior offense].)

Defendant notes the record shows only that he was convicted of a section 246.3 violation. He argues his prior conviction may have been based on vicarious liability as an aider and abettor, and there is no evidence or admission that he personally discharged the firearm.

■ It is possible to be convicted of grossly negligent discharge of a firearm under section 246.3 without personally using a firearm, e.g., as an aider and abettor. Both parties on appeal cite *People v. Bartow* (1996) 46 Cal.App.4th 1573 [54 Cal.Rptr.2d 482], for this proposition, but this proposition was assumed rather than decided in *Bartow*, where the prosecution alleged not only that the defendant had a prior section 246.3 conviction, but also that he personally used a firearm in that prior offense. (*Bartow*, at p. 1576 [trial court erred in refusing to admit portions of transcript of the trial of the prior offense showing it was defendant's companion who fired the gun].) The possibility of a section 246.3 conviction without personal use of a firearm was implicit in *People v. Bautista, supra*, 125 Cal.App.4th 646, and *People v. Leslie, supra*, 47 Cal.App.4th 198, but not expressly addressed. Nevertheless, it has been held in an analogous context that the offense of shooting at an occupied motor vehicle under section 246[6] can be committed without personally using a firearm, e.g., when the defendant has aided and abetted the shooter. (*People v. Piper* (1986) 42 Cal.3d 471, 476 [229 Cal.Rptr. 125, 722 P.2d 899]; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1531 [86 Cal.Rptr.2d 134].) The same rule necessarily applies to the similar language of section 246.3.[7]

---

[6] Like section 246.3, which refers to "any person who willfully discharges a firearm" in a grossly negligent manner, section 246 refers to "[a]ny person who shall maliciously and willfully discharge a firearm" at an occupied vehicle.

[7] We note section 1192.7, subdivision (c)(42), includes in the definition of serious felony, "any conspiracy to commit an offense described in this subdivision." Aiding and abetting an offense where someone other than the defendant uses a firearm does not constitute a conspiracy

The People implicitly acknowledge the lack of evidence that defendant personally used the firearm in the 1990 conviction. The People imply defendant forfeited the contention or invited error by admitting the prior conviction allegation in the trial court.

However, defendant himself admitted only the "prior conviction." He did not admit the enhancement allegation. He did not admit the prior conviction was a serious felony. He did not admit he personally discharged the firearm at issue in the 1990 conviction. Even if defense counsel's statements could bind defendant, which they cannot (§ 1018 [every plea shall be entered by the defendant himself]), defense counsel merely said defendant was admitting the "prior[]," not the enhancement allegation.

The documents submitted by the prosecution did not show defendant personally discharged the firearm.

Thus, there was no admission or evidence of personal use of a firearm that would qualify defendant's 1990 conviction as a "strike" under section 667 or 1170.12. Accordingly, no substantial evidence supports using the prior section 246.3 conviction as a "strike." We need not address defendant's argument that, if his admission sufficed to establish the prior conviction as a serious felony, then he received ineffective assistance of counsel.

Defendant argues remand is not necessary, and we should strike the prior conviction and reduce the sentence. Though not mentioned by the parties on the matter of remedy, we applied such a remedy in *People v. Best, supra,* 56 Cal.App.4th 41. Nevertheless, as noted by defendant, the California Supreme Court has more recently said the remedy in such a case is remand for retrial at the prosecution's election. (*People v. Barragan* (2004) 32 Cal.4th 236, 239 [9 Cal.Rptr.3d 76, 83 P.3d 480].) The People ask for remand in order to retry the matter. We shall vacate the prior serious felony finding and remand to allow the prosecution the opportunity for retrial.

## II. *Lesser Included Offense*

Defendant argues, as an alternative to his substantial evidence argument, that the trial court erred by failing to instruct the jury sua sponte regarding the lesser included offense of simple assault (§ 240).[8] We shall reject the contention because the record did not support an instruction on simple assault.

---

to commit a felony described in subdivision (c)(8) and (23), i.e., felonies in which the defendant personally uses a firearm or deadly weapon.

[8] Section 240 states, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." "Violent injury" can be " 'the least touching' "; it includes any wrongful act committed by means of physical force against the

Defendant, without acknowledging he expressly waived instruction on lesser offenses, cites case law that such instruction is required even when the defendant objects to it. The People, without acknowledging the case law cited by defendant, argue defendant invited any error by expressly waiving instruction on lesser offenses.

The reporter's transcript shows:

"THE COURT: Any other loose ends?

"MR. PLATT [defense counsel]: There was the issue of the defendant waiving any lesser includeds.

"THE COURT: That's correct. Okay.

"MR. PLATT: Just a second to refresh his recollection.

"(Discussion held between defense counsel and his client off the record)

"MR. PLATT: Judge, he is aware of the waiver of the requested lessers and it's his choice as well as mine. I advised him that we waive any lesser offenses. He understands the consequence of it.

"THE COURT: Okay. [¶] Mr. Golde, is that correct what your attorney just said?

"THE DEFENDANT: Yes, sir, it is.

"THE COURT: Okay. You do have the right, if you wish, to have some lesser included offenses included in the charge. [¶] For example, [lesser offenses of kidnapping and false imprisonment]. [¶] . . . [A]nd so on down the road. And as I understand your attorney's explanation, you guys have made a tactical decision not to include any lessers you feel that are—maybe, Mr. Platt, I'll let you express that since it's your case.

"MR. PLATT: Judge, the issue is that our defense has been all along that this did not occur. That [the victim] was not kidnapped in any fashion, restrained in any fashion. That it is consistent with her previous conduct about [sic] [defendant] did nothing of a criminal nature as it relates to any of the incidents that are alleged on August the 28th of 2005 and we have consistently insisted that as our defense. It hasn't changed. And so our

---

person of another, even if only the feelings of such person are injured. (*People v. Colantuono, supra*, 7 Cal.4th at p. 214 & fn. 4.)

decision has got to—we had a discussion about the ability to have lesser-included offenses and I think that's not consistent with our or he—well, as I made that decision to . . .—we request not to give the lesser-included instruction.

"THE COURT: Okay. Mr. Golde [defendant], do you agree?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. Very well."

■ Despite this express waiver by defendant, the trial court was required to instruct on any lesser included offenses supported by the evidence. " 'The obligation to instruct [sua sponte] on lesser included offenses [as opposed to defenses] exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.] Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. [Citation.]' [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154–155 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) "[I]nsofar as the duty to instruct applies regardless of the parties' requests or objections, it prevents the 'strategy, ignorance, or mistakes' of *either* party from presenting the jury with an 'unwarranted all-or-nothing choice,' encourages 'a verdict . . . no harsher *or more lenient* than the evidence merits' [citation], and thus protects the jury's 'truth-ascertainment function' [citation]. 'These policies reflect concern [not only] for the rights of persons accused of crimes [but also] for the overall administration of justice.' [Citation.]" (*Id.* at p. 155.)

The People ignore defendant's reliance on *Breverman* and cite inapposite authority about invited error. We shall follow *Breverman*.

We conclude the trial court erred by leaving it up to defendant to decide whether to instruct the jury on lesser included offenses.

■ The question remains whether the trial court should have instructed on simple assault as a lesser included offense in this case. We accept, for purposes of this appeal, defendant's assertion that simple assault is a lesser included offense of section 245, subdivision (a)(1), assault with a deadly weapon or with force likely to produce great bodily injury. Nevertheless, a trial court errs in failing to instruct on a lesser included offense only if the lesser offense is supported by substantial evidence in the record. (*People v.*

*Breverman, supra,* 19 Cal.4th 142, 162.) "[T]he court is not obliged to instruct on theories that have no such evidentiary support." (*Ibid.*)

Defendant argues substantial evidence existed to support an instruction on simple assault, because a car is not inherently deadly, and a jury could find it was not used as such, based on defendant's intent. Defendant cites *People v. Beasley* (2003) 105 Cal.App.4th 1078 [130 Cal.Rptr.2d 717], where the defendant beat the victim with a broomstick, there was insufficient evidence that the broomstick, as used by the defendant, was capable of causing great bodily injury, and the appellate court reduced the conviction from assault with a deadly weapon or force likely to produce great bodily injury (§ 245) to simple assault.

However, even assuming *Beasley* is correctly decided, a car is very different from a broomstick. Although a jury may consider the nature of an object and how it was used in determining whether an object not inherently dangerous is used as such (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029 [68 Cal.Rptr.2d 655, 945 P.2d 1204]), it is ludicrous to suggest on this record that defendant committed only simple assault when he drove a motor vehicle toward the four-foot 11-inch, 83-pound victim, and repositioned the vehicle in her direction when she tried to move out of its way.[9]

Under the subheading that substantial evidence supported giving an instruction on simple assault, defendant argues, "given the suspect nature of the charges in general, and the jury's acquittal on every other charge, it's likely the jury contemplated why appellant would have any intent to hit Hilda [the victim] with the car. If all of Hilda's allegations were lies, then Hilda's multiple claims appellant was trying to hurt or kill her were also lies. Given Hilda's strange behavior in jumping out of the moving car in the first place, the jury could have concluded appellant might have touched Hilda with the car, intentionally or not, warranting an assault conviction, but in so doing he was not using force likely to produce great bodily injury."

First, as we have explained, the jury found defendant not guilty on the assault charge (Count Seven) that was predicated on the car's actually hitting the victim (fn. 2, *ante*). Second, the acquittal on other charges (which necessarily occurred after jury deliberations) is immaterial to the question whether the trial court was required to give a particular instruction based on the state of the evidence. Third, as we explained in our discussion of substantial evidence of the section 245 conviction, defendant misperceives the *intent* element, and intent to hit the victim was not a required element of

---

[9] The People argue this is especially so because one witness saw the victim bounce off the front of the car. We disagree, because the prosecutor used this evidence for the Count Seven assault charge, for which the jury found defendant not guilty.

the assault conviction. Defendant's characterization of the victim's initial accusations as "suspect" does not help defendant, because there is no way that driving a car toward a person can constitute simple assault but not assault with a deadly weapon or force likely to cause great bodily injury.

We conclude the evidence did not support simple assault, and therefore the trial court did not err in failing to instruct on simple assault as a lesser included offense. (*People v. Page* (2004) 123 Cal.App.4th 1466, 1474 [20 Cal.Rptr.3d 857]; see *People v. Abilez* (2007) 41 Cal.4th 472, 514 [61 Cal.Rptr.3d 526, 161 P.3d 58]; *People v. Hughes* (2002) 27 Cal.4th 287, 367 [116 Cal.Rptr.2d 401, 39 P.3d 432].) We therefore need not address the parties' arguments as to whether the claimed error was prejudicial.

### III.  *CALCRIM Instructions*

Defendant challenges the following CALCRIM jury instructions on the grounds that they are misleading, misstate the law, or are incomplete—CALCRIM Nos. 101, 102, 104, 200, 220, 223, 225, 226, 300, 302, 315, 316, 318, 333, 355, 875.

After defendant's opening brief was filed, we issued an opinion in *People v. Anderson* (2007) 152 Cal.App.4th 919 [61 Cal.Rptr.3d 903], in which we rejected similar challenges to CALCRIM Nos. 200, 220, 223, 226, 300, 302, 316, and 355, made by the same appellate counsel who represents defendant in this appeal. The People cite *Anderson* in their respondent's brief. Defendant did not file a reply brief. *Anderson* defeats defendant's challenges to CALCRIM Nos. 200, 220, 223, 226, 300, 302, 316, and 355.

After the filing of briefs by both sides in this appeal, the Fifth Appellate District issued an opinion, *People v. Ibarra* (2007) 156 Cal.App.4th 1174 [67 Cal.Rptr.3d 871], rejecting challenges to CALCRIM Nos. 101, 102, 104, as well as challenges to some of the instructions we addressed in *Anderson*, made by the same attorney who is before us in this appeal. We agree with *Ibarra* and therefore reject defendant's challenges to CALCRIM Nos. 101, 102, and 104.

That leaves defendant's challenges to five CALCRIM instructions—CALCRIM Nos. 225, 315, 318, 333, and 875. We shall assume for the sake of argument that defendant preserved his right to challenge these instructions (though the People argue to the contrary), and we therefore need not address defendant's claim that any forfeiture is attributable to ineffective assistance of counsel. We shall conclude defendant fails to show instructional error warranting reversal of the judgment.

## A. *CALCRIM No. 225*

Defendant contends CALCRIM No. 225[10] (circumstantial evidence of intent or mental state), when given together with CALCRIM No. 223[11] (defining direct and circumstantial evidence), as it was in this case, was confusing, misleading, contradictory, and deprived defendant of due process and a fair trial. We disagree.

According to defendant, the problem is that CALCRIM No. 225 sets forth limitations of reasonable doubt and burden of proof principles as to circumstantial evidence only, implying such limitations do not apply to direct evidence. Defendant also complains CALCRIM No. 225 merely requires jurors to be "convinced" defendant is guilty. Defendant says a juror may be "convinced" in his or her own mind that the defendant is guilty beyond a reasonable doubt even if the evidence has fallen short of so proving.

As the People observe, we rejected similar arguments to the parallel instruction in CALCRIM No. 224 (sufficiency of circumstantial evidence) in *People v. Anderson, supra,* 152 Cal.App.4th at pages 931–934. Our reasoning applies to defeat the current challenge to CALCRIM No. 225.

---

[10] CALCRIM No. 225 told the jury: "The People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state. The instructions for each crime explain the intent or mental state required. [¶] An intent or mental state may be proved by circumstantial evidence. [¶] Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

[11] CALCRIM No. 223 told the jury: "Facts may be proved by direct or circumstantial evidence or by a combination of both. Direct evidence can prove a fact by itself. [Example.] Circumstantial evidence also may be called indirect evidence. Circumstantial evidence does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which you may conclude the truth of the fact in question. [Example.] [¶] Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all the evidence."

B. *CALCRIM No. 315*

Defendant complains CALCRIM No. 315[12] improperly misled the jury by setting forth specific "questions" for the jury to consider in evaluating identification testimony which, according to defendant, implied the listed questions were complete and exclusive. Defendant complains the instruction is misleading because it prevents the jurors from formulating their own questions for evaluating identification testimony.

However, the last "question" the jury was told to consider in evaluating identification testimony was: "Were there any other circumstances affecting the witness's ability to make an accurate identification?"

Thus, defendant's argument on its face lacks merit. The trial court did not err in giving CALCRIM No. 315.

C. *CALCRIM No. 318*

Defendant argues CALCRIM No. 318[13] misstates the law by telling jurors they "may" use prior statements by a witness. Defendant argues jurors should not be allowed to ignore evidence.

■ However, we reject this contention, just as we rejected the similar contention made with respect to CALCRIM No. 316 in *People v. Anderson, supra*, 152 Cal.App.4th 919, 940–941. Thus, the jurors were instructed,

---

[12] The jury was instructed pursuant to CALCRIM No. 315: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following questions: [¶] Did the witness know or have contact with the defendant before the event? [¶] How well could the witness see the perpetrator? [¶] What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation? [¶] How closely was the witness paying attention? [¶] Was the witness under stress when he or she made the observation? [¶] Did the witness give a description and how does that description compare to the defendant? [¶] How much time passed between the event and the time when the witness identified the defendant? [¶] Was the witness asked to pick the perpetrator out of a group? [¶] Did the witness ever fail to identify the defendant? [¶] Did the witness ever change his or her mind about the identification? [¶] How certain was the witness when he or she made an identification? [¶] Are the witness and the defendant of different races? [¶] Were there any other circumstances affecting the witness's ability to make an accurate identification? [¶] The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find . . . the defendant not guilty."

[13] CALCRIM No. 318 told the jury: "You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] AND [¶] 2. As evidence that the information in those earlier statements is true."

pursuant to CALCRIM No. 220, "you must impartially compare and consider all the evidence that was received throughout the entire trial." CALCRIM No. 318 tells the jurors how they may use the prior statements "[i]f [they] decide that the witness made those statements . . . ." Thus, the "may" comes into play only after the jurors have found the statements were made. The instruction does not allow the jurors to ignore evidence.

Defendant's challenge to CALCRIM No. 318 is without merit.

### D. *CALCRIM No. 333*

Defendant argues CALCRIM No. 333,[14] regarding opinion testimony of lay witnesses, is erroneous in requiring the jury to decide "whether information on which the witness relied [in forming the opinion] was true and accurate," because the instruction requires the jury to decide the truth and accuracy of evidence that was not presented at trial.

■ However, the jury instruction does not suggest that lay opinion could be based on information that was not presented at trial (and defendant does not point to any lay opinion testimony in this case that was based on information not presented at trial). While *experts* can testify to opinions based on matters not admitted into evidence (Evid. Code, § 801), CALCRIM No. 333 was specific to *lay* opinion testimony, and an opinion by a nonexpert "is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness . . . ." (Evid. Code, § 800.) In order for such an opinion to be admissible, evidence would be adduced as to the basis for the opinion, i.e., the perception that led the witness to that opinion. Thus, lay opinion will be based on information that was presented at trial, and defendant cites nothing to the contrary in this trial.

We conclude defendant fails to show grounds for reversal based on CALCRIM No. 333.

### E. *CALCRIM No. 875*

Defendant contends CALCRIM No. 875, setting forth the elements of the assault charge, was incomplete in that it failed to allow the jurors to consider

---

[14] CALCRIM No. 333 told the jury: "Witnesses, who were not testifying as experts, gave his or her [*sic*] opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

the absence of injury and omitted a requirement that the victim must have sustained emotional distress. We shall conclude defendant's arguments are without merit.

CALCRIM No. 875 instructed the jury in part that, in order to prove defendant guilty of assault with a deadly weapon or with force likely to produce great bodily injury, the People had to prove:

(1) That defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; or

(1a–b) That defendant did an act that by its nature would directly and probably result in the application of force to a person, and the force used was likely to produce great bodily injury; and

(2) Defendant did the act willfully; and

(3) When defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and

(4) When defendant acted, he had the present ability to apply force likely to produce great bodily injury or with a deadly weapon.

Defendant complains of the portion of the instruction which told the jury: "No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was." Defendant argues the instruction is incomplete because it fails to allow the jury to consider the *absence* of injury in their determinations. Defendant's argument is hard to follow, perhaps because it is specious. He argues "the absence of an injury may be just as relevant as the presence of an injury to the jury's determination of whether an unlawful touching was a direct and probable result of the defendant's conduct. For example, if the defendant contends the act was committed in such a way as to merely scare the victim without actual imposition of physical force, the fact that no injury was actually inflicted would be highly relevant to this defense. Or, as in this case, the evidence indicated appellant was just trying to get close enough to Hilda to get her back into the car from which she had jumped. Again, the absence of injury could lead to the conclusion there was no intent to harm or instill fear." Defendant argues the instruction should have been modified to properly instruct the jury it could consider both the presence *and* absence of actual injury.

Defendant's argument is without merit. As we have explained, intent to harm is not an element of the crime of assault with a deadly weapon, and therefore it would not be proper to instruct the jury that absence of injury could lead to the conclusion that there was no intent to harm. The jury was properly instructed on the mental element of the crime, i.e., that the act was done willfully, with awareness of facts that would lead a reasonable person to realize his act by its nature would directly and probably result in the application of force to someone. The instruction also told the jury: "Someone commits an act willfully when he or she does it willingly or on purpose. *It is not required that he or she intend to* break the law, *hurt someone else*, or gain any advantage. [¶] . . . [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted." (Italics added.)

We conclude the instruction was not defective in failing to tell the jurors they could consider the absence of injury as reflecting an absence of intent to harm.

Defendant also complains the instruction failed to tell the jury that, in the absence of physical injury to the victim, the prosecution must prove the victim suffered emotional distress. However, defendant fails to show any such requirement but instead cites cases indicating that assault is an attempt to cause violent injury, which includes emotional injury. Defendant cites *People v. Bradbury* (1907) 151 Cal. 675 [91 P. 497], which indicated assault is an attempt to commit a violent injury, and the "injury" need not be bodily harm but includes any wrongful act committed by means of physical force, even though only the feelings of such person are injured by the act. (*Id.* at pp. 676–677 [affirming conviction for assault where the defendant was charged with assault with intent to commit rape, but the jury found no attempt to commit rape by the defendant, who was sexually impotent].) Defendant also cites *People v. Colantuono, supra*, 7 Cal.4th 206, which said the crime of assault is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another, i.e., to commit a battery. (*Id.* at p. 214.) It does not require intent to inflict bodily harm. (*Ibid.*) "Violent injury" is not synonymous with bodily harm, but includes any wrongful act by means of physical force, even though only the feelings of such person are injured. (*Id.* at p. 214, fn. 4.)

Defendant argues from these authorities that where, as here, the assault did not cause bodily injury, the jury should be required to find the victim suffered emotional distress. However, actual causation of injury (physical or emotional) is not a required element for assault. (*People v. Ibarra, supra*, 156 Cal.App.4th at p. 1195 [rejected reliance on *Bradbury* as authority that emotional injury was required].) Rather, assault is an unlawful attempt,

coupled with present ability, to commit violent injury (physical or emotional). (*People v. Colantuono, supra*, 7 Cal.4th at p. 214 & fn. 4.)

The jury was properly instructed, "No one needs to actually have been injured by defendant's act."

We conclude defendant fails to show any error in the CALCRIM instructions, and we therefore need not address defendant's contention of cumulative prejudice from the challenged instructions.

## DISPOSITION

The judgment is modified to vacate the sentence and the finding that "[d]efendant was sentenced pursuant to PC 667(b)–(i) or PC 1170.12 (two-strikes)." The matter is remanded to the trial court which shall give the prosecution, as soon as the matter can be heard, an opportunity to establish a factual basis for the strike allegation. If the prosecution successfully does so, the trial court shall reenter the judgment and prepare and distribute as appropriate a new abstract of judgment. If the prosecution does not establish a factual basis for the strike allegation, the trial court shall dismiss the allegation and resentence defendant. The judgment is otherwise affirmed.

Nicholson, J., and Cantil-Sakauye, J., concurred.