Filed 7/18/13  P. v. Tran CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C072200 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F04439) |
| v. | |
| EMILY LETUYEN TRAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Emily Letuyen Tran of the attempted murder of Marissa Vilaysouk (Pen. Code, §§ 664, 187 subd. (a); count one)[1] and two counts of assault upon Vilaysouk with a deadly weapon, to wit, a car (§ 245, subd. (a)(1); counts two [in the dirt lot] and six [on Martin Luther King (MLK) Boulevard]).  The jury acquitted defendant on additional counts charging assault with a deadly weapon (counts three, four, and five) and criminal threats (count seven).

---

[1] Undesignated statutory references are to the Penal Code.

1

Sentenced to state prison, defendant appeals. She contends insufficient evidence supports counts one and two. We conclude more than sufficient evidence supports counts one and two. Defendant also contends the trial court erroneously imposed a concurrent term for count two since it was indivisible conduct from that in count one. The People concede. We agree and will modify the judgment accordingly.

FACTS

"In reviewing the sufficiency of the evidence, we must draw all inferences in support of the verdict that can reasonably be deduced and must uphold the judgment if, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (*People v. Miranda* (1987) 44 Cal.3d 57, 86.) Viewed in the light most favorable to the prosecution and with all reasonably deducible inferences drawn in support of the verdict, the following evidence was adduced at trial.

On June 19, 2011, Marissa Vilaysouk went to Wal-Mart with David Saetuern who drove a four-door Acura Legend. Vilaysouk had previously dated Saetuern who, at the same time, had dated defendant. Vilaysouk had met defendant and described their meetings as "[m]ore than tense."

As Saetuern and Vilaysouk left Wal-Mart, Saetuern seemed nervous, having seen defendant. Saetuern drove to the back of Wal-Mart where they saw defendant who was driving a sport utility vehicle (SUV). Defendant stopped next to them, driver-side to driver-side, but said nothing to them.

Saetuern drove out of the parking lot and eventually onto Stockton Boulevard. Defendant followed them. When Saetuern stopped at a stoplight, defendant hit the back of their car. Saetuern drove onto Highway 99 and defendant followed. Vilaysouk was frightened. Saetuern tried speeding away from defendant but defendant gave chase and again hit Saetuern's car.

2

Saetuern exited the highway at MLK Boulevard and when he stopped at the stop sign, defendant hit Saetuern again. Vilaysouk was afraid she might get hurt or die. Saetuern continued on the boulevard and defendant followed. Defendant hit Saetuern's car again, causing his car to spin out and crash into a chain link fence around a dirt field. Vilaysouk and Saetuern both got out of the Legend and started to run through the dirt field, believing that defendant was going to hit his car again.

Defendant drove her car towards Vilaysouk who zigzagged through the field up to a brick wall. Defendant hit Vilaysouk on the left side of her body with the SUV, knocking Vilaysouk to the ground, and then crashed into the brick wall which crumbled. Vilaysouk dropped her purse as she fell and "blanked out" for a moment. She then heard Saetuern tell her to get up and run. Vilaysouk and Saetuern ran to a restaurant where Vilaysouk, who was in pain and bleeding from her head, arm, legs, and foot from lacerations and abrasions, sat down and called 911.

Manuel Nunez witnessed defendant accelerate her SUV towards Vilaysouk, making a "hard left" towards her, and strike the brick wall, hitting and ejecting Vilaysouk away from the brick wall. Nunez was "amaz[ed]" that Vilaysouk was able to get up and run to the restaurant. Nunez saw defendant get out of the SUV, pick up Vilaysouk's purse, remove something from the wallet, and then throw the purse onto the ground. When Nunez asked defendant what was happening, defendant claimed "they stole my car."

Defendant followed Vilaysouk to the restaurant, entered, and threatened Vilaysouk, "Bitch, I'll kill you." Vilaysouk was afraid for her life. Removed from the restaurant by its employees, defendant stood outside the door, banged on the windows, and stared at Vilaysouk.

California Highway Patrol Officer Hugh Council responded to a call of highway violence which ended in a collision. Officer Council arrested both defendant and Saetuern. Saetuern was arrested because defendant claimed that the Acura Legend

3

belonged to her and that Saetuern did not have permission to drive it. After having been advised of his rights, Saetuern recounted the chase consistent with Vilaysouk's account.[2] Defendant admitted that she had "bump[ed] into" Saetuern's car a few times. She did not answer how her SUV crashed into the brick wall. She never claimed she lost control. Defendant was found in possession of Vilaysouk's identification card. Defendant explained that she wanted to know who was in the car with Saetuern. The SUV had "major front end damage." The officer opined that defendant had not lost control of her SUV and that the impact with the brick wall at 25 to 35 miles per hour was intentional based on the lack of skid marks in the dirt and the direct angle of impact.

Defendant testified. She stated that she and Saetuern had been dating for six years. She considered the Acura Legend hers even though originally purchased by Saetuern's mother because defendant had paid for the license, registration, and smog. Saetuern's license had been revoked but he still drove the car, receiving parking tickets, and let others drive.

On June 19, 2011, defendant and Saetuern had an argument about the Acura Legend which both wanted to drive that day. Defendant directed Saetuern to drive her to work and then to return home with it. After work, defendant went to Wal-Mart in her mother's car and saw Saetuern driving the Acura Legend. She followed and met Saetuern in the back of Wal-Mart and they made eye contact. She chased him on the streets and when he braked hard, she hit his car. She denied hitting him on the highway. She followed him off the highway and hit his car, causing his car to spin out. She continued at 60 miles per hour straight into the brick wall. She had tried to hit the brakes but hit the gas instead. She heard a scream but did not see Vilaysouk prior to hitting the wall. She followed them to a restaurant, yelled for Saetuern to meet with her outside, and

---

[2] Saetuern recanted at trial.

4

denied threatening Vilaysouk. Defendant denied trying to hit or kill anyone with her SUV in the dirt lot. She returned to the field and took out Vilaysouk's identification.

DISCUSSION

I

Defendant contends insufficient evidence supports count one, attempted murder of Vilaysouk. We reject her contention.

" 'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. [Citation.] Attempted murder requires express malice, that is, the assailant either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) Intent to kill may be inferred from defendant's acts and the circumstances of the offense. (*People v. Smith* (2005) 37 Cal.4th 733, 741 (*Smith*).) "No minimal period of time for reflection had to be shown in order to establish defendant's criminal state of mind . . . ." (*Id.* at p. 743.) Even if defendant's act was done " 'without advance consideration,' " a jury may infer from the totality of the circumstances that the defendant acted with express malice toward the victim. (*Id.* at pp. 743-744.)

Defendant claims there was no evidence she knew Vilaysouk was in Saetuern's car or that she saw Vilaysouk in the dirt lot or of planning or preparation to demonstrate an intent to kill. Defendant also argues there was insufficient evidence that her act of driving towards Vilaysouk was purposeful. She relies on her own testimony that she lost control and accidentally stepped on the gas rather than the brakes.

There is evidence that defendant harbored the specific intent to kill Vilaysouk, a woman she knew and who was running in the dirt lot, and committed a direct act towards commission of that goal. The evidence reflects that defendant aimed her SUV at Vilaysouk. Again, "[n]o minimal period of time for reflection had to be shown in order to establish defendant's criminal state of mind . . . ." (*Smith, supra,* 37 Cal.4th at p. 743.)

5

Nunez witnessed defendant accelerate her SUV towards Vilaysouk, making a "hard left" towards her, hit her, and strike the brick wall, ejecting Vilaysouk away from the brick wall. There were no skid marks in the dirt, reflecting that defendant did not apply the brakes prior to hitting Vilaysouk, and the SUV hit the wall at a direct angle, reflecting that defendant did not try to avoid hitting Vilaysouk. Defendant's act of using her SUV to hit Vilaysouk who was running away from defendant was preceded by her conduct of chasing and ramming Saetuern and Vilaysouk in Saetuern's car, causing Saetuern's car to spin out and crash into the chain link fence. Defendant testified that she followed "them," that "they all fleed [sic]" when the car spun out, and that Vilaysouk "ended up running with him." She admitted seeing both Saetuern and Vilaysouk in Saetuern's car that night. Even after hitting Vilaysouk and the brick wall with her SUV, defendant continued to give chase on foot, following Vilaysouk to the restaurant where defendant threatened to kill Vilaysouk. That the jury acquitted defendant of criminal threats is of no assistance to defendant. Employees removed defendant from the restaurant so there was no immediacy to defendant's threat. It is circumstantial evidence, however, of defendant's jealous rage which led to her criminal acts, a rage that did not subside even when defendant hit Vilaysouk and crashed into the brick wall.

Based on the totality of the circumstances, the jury could reasonably conclude that defendant intended to kill Vilaysouk and intentionally drove her SUV towards Vilaysouk.

## II

Defendant also challenges the evidence supporting her conviction for assault upon Vilaysouk with a deadly weapon, to wit, her SUV, in the dirt field (count two). We conclude sufficient evidence supports her conviction.

"The mental element for the assault charge is that 'assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in

6

the application of physical force against another.'  (*People v. Williams* (2001) 26 Cal.4th 779, 790.)  'The mens rea [for assault] is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery.  Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm.  [Citation.]  The evidence must only demonstrate that the defendant willfully or purposefully attempted a "violent injury" or "the least touching," i.e., "any wrongful act committed by means of physical force against the person of another."  [Citation.]  In other words, "[t]he use of the described force is what counts, not the intent with which same is employed."  [Citation.]  Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state.  [Citation.]'  (*People v. Colantuono* (1994) 7 Cal.4th 206, 214–215.)"  (*People v. Golde* (2008) 163 Cal.App.4th 101, 108-109, fn. omitted (*Golde*).)[3]

Based on Nunez's observations of defendant's act of accelerating her SUV and making a "hard left" towards Vilaysouk, hitting her and crashing straight into the brick wall, and the officer's observations of no skid marks in the dirt field and a direct angle of impact with the wall, the evidence supports defendant's conviction.  Defendant "willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery."  (*People v. Colantuono* (1994) 7 Cal.4th at p. 214; *Golde, supra,* 163 Cal.App.4th at p. 108.)

Relying on her own testimony that she lost control of her SUV and did not see Vilaysouk, defendant claims that she did not purposefully drive her SUV towards Vilaysouk.  Defendant is essentially asking this court to reinterpret and reweigh the

---

**3** *Golde* noted that in *People v. Wright* (2002) 100 Cal.App.4th 703 this court disagreed with *People v. Williams, supra*, 26 Cal.4th 779, but "followed it as a binding precedent." (*Golde, supra,* 163 Cal.App.4th at p. 108, fn. 3.)

evidence which is not our standard of review. The evidence discussed previously is more than sufficient to support defendant's conviction for assault with a deadly weapon, to wit, her SUV.

## III

The trial court imposed the midterm of three years for assault with a deadly weapon (count two) to run concurrent with the low term of five years imposed for attempted murder (count one). Defendant contends and the People concede that the acts in counts one and two constituted an indivisible course of conduct, requiring a stay on the sentence imposed for count two. We agree and will order the judgment modified accordingly.

The People argued to the jury that counts one and two involved defendant's conduct of driving towards Vilaysouk in the dirt lot. At sentencing, the trial court imposed a concurrent term for count two, finding the crimes occurred in a continuous course of conduct. Defendant's attempt to murder Vilaysouk in the dirt field (count one) and defendant's assault of Vilaysouk with defendant's SUV in the dirt field (count two) constituted an indivisible course of conduct incident to a single criminal intent and objective - the assault offense was committed as the means of perpetrating the attempted murder. Section 654 requires the sentence for the assault offense to be stayed. (*People v. Hester* (2000) 22 Cal.4th 290, 294; *Neal v. State of California* (1960) 55 Cal.2d 11, 19-20, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331.)

We also note that the abstract of judgment erroneously reflects that the low term was imposed for counts two and six. The trial court imposed midterms. We will order the abstract corrected accordingly.

## DISPOSITION

The judgment is modified, staying the sentence imposed for count two, assault with a deadly weapon. The trial court is directed to prepare an amended abstract of judgment accordingly as well as to correct the abstract to reflect a midterm sentence on

8

counts two (now stayed) and six (still concurrent) and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                                                                 BLEASE , Acting P. J.


We concur:


         NICHOLSON , J.


         MAURO , J.