Filed 3/26/13  P. v. Saldana CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054360 |
| v. | (Super.Ct.No. FSB1003108) |
| JOSE SALDANA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael M. Dest, Judge.  Affirmed in part; reversed in part with directions.

Phillip I. Bronson and Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kevin Vienna, Meredith S. White and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Saldana appeals after a guilty plea, sentence, and admission to probation.  He contends that he should receive additional presentence

1

custody credits under an amended version of Penal Code section 4019.[1]  We remand for further proceedings.

<u>FACTS AND PROCEDURAL HISTORY</u>

On or about July 24, 2010, defendant sold two ounces of methamphetamine and two ounces of heroin to a confidential informant who was working with police.  The confidential informant used $3,200 in bills to purchase the drugs; the serial numbers of those bills had been recorded by police before the transaction.  Police stopped the car defendant was driving after he left the location of the narcotics transaction.  Defendant had one of the recorded bills when he was arrested.

A few days later, on July 27, 2010, the San Bernardino County District Attorney filed a felony complaint, charging defendant and two codefendants with one count of sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a))(Count 1), one count of sale, transportation or offer to sell cocaine (Health & Saf. Code, § 11352, subd. (a))(Count 2), and one count of conspiracy to commit a crime (sale of methamphetamine and cocaine) (Pen. Code, § 182, subd. (a)(1))(Count 5).  Counts 3, 4, 6 and 7 of the felony complaint charged offenses against persons other than defendant and the other codefendants named in counts 1, 2 and 5.

Defendant initially entered a plea of not guilty to the charges in December 2010.  The preliminary hearing was continued numerous times over the course of the ensuing months.  On May 13, 2011, without proceeding to a preliminary hearing, defendant

_____

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

changed his plea pursuant to a plea bargain. Defendant agreed to plead guilty to count 1 and count 2. Count 2, sale, transportation or offer to sell cocaine, would be designated the principal term with a state prison sentence of five years (aggravated term). As to count 1, the court would impose one additional year (one-third the middle term of three years) to be served consecutively, for a total state prison commitment of six years. Any other charges as to defendant would be dismissed. The bargain called for a stay of execution of the sentence, and defendant would be placed on supervised felony probation for three years. The sentencing court would set the terms of probation, but it was agreed that one of the terms of probation would require defendant to serve 270 days of straight time in the county jail. Defendant affirmatively acknowledged these terms, conditions and consequences of his plea. Nothing was said at the time of defendant's change of plea about conduct credits, aside from the custody days defendant had already actually served (four days), and nothing about the rate at which any applicable credits would be earned. The agreement as stated in open court was for 270 days "straight time," with no mention of half-time or other fractional time of actual custody. The court accepted defendant's change of plea, and set a hearing for sentencing on June 20, 2011.

At the hearing on June 20, 2011, the court imposed sentence of six years state prison, as agreed, then suspended execution of the sentence and granted supervised probation for 36 months. The court ordered, as a condition of probation, that defendant serve 270 days in the county jail, with credit for 4 days actually served, "plus conduct credit pursuant to PC4019." The trial court granted credits under "Old PC4019 (1/3 time)."

3

Defendant filed a notice of appeal on August 18, 2011, asserting that his trial attorney (who had died between the taking of the plea and the sentencing hearing) had repeatedly promised him that he would be eligible for enhanced conduct credits, so that he would serve only one-half the stated term. "I was in agreement in serving 270 days with halftime. My attorney repeatedly told me it would be halftime in which I would serve 135 days total. When I appeared for sentencing on June 20th I was informed my attorney had passed and was appointed a private attorney . . . . And was not informed that I was going to serve 2/3's time according to PC 4019 (old) which has turned in to 174 days." Defendant requested a certificate of probable cause to pursue the issue on appeal, but the request was denied.

## ANALYSIS

### I. The Issue Is Appealable

"In general, a defendant may appeal from a final judgment of conviction, unless otherwise limited by sections 1237.1 and 1237.5. [Citations.] Section 1237.5, which is at issue here, provides in full: 'No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court.' The purpose of section 1237.5 is 'to weed out frivolous and vexatious appeals from pleas of guilty or no

4

contest, before clerical and judicial resources are wasted.' [Citations.]" (*People v. Maultsby* (2012) 53 Cal.4th 296, 298-299, fn. omitted.)

Here, defendant did apply for a certificate of probable cause, but the trial court denied the application. A certificate of probable cause is required for issues that challenge or attack the fundamental validity of the plea. However, the certificate of probable cause requirement does not apply to appeals based on grounds that arise after entry of the plea, and which do not challenge the validity of the plea. (*People v. Placencia* (2011) 194 Cal.App.4th 489, 494-495; see Cal. Rules of Court, rule 8.304(b).)

Here, although defendant's notice of appeal initially phrased his contention in terms suggesting that his plea was not valid (i.e., that he would not have pleaded guilty if he had not been promised credits at the accelerated rate), the issue he raises actually addresses matters which arose after the plea and which affect the terms of his probation. That is, at sentencing after the plea, the trial court changed the credits defendant would be able to earn against the period of custody his probation required him to serve.

Defendant also urges that, even though he signed a general waiver of his appeal rights as part of the plea bargain, that waiver did not include an appeal based on the conduct credits issue. Defendant agreed that, "I waive and give up any right to appeal from any motion I may have brought or could bring and from the conviction and judgment in my case since I am getting the benefit of my plea bargain." Defendant further argues that he was never given written advisement of his appellate rights and no oral waiver of his appellate rights was taken on the record.

The People agree that defendant's general waiver did not encompass or contemplate a waiver of appeal on the claim for conduct credits, because that matter had not yet occurred at the time the plea agreement was entered.

We agree also, and we conclude that the issue is properly appealable.

## II. Defendant Should Be Awarded Credits at the Accelerated Rate

### A. Statutory Background

Before January 25, 2010, a person held in county jail prior to sentencing, or serving a term in county jail as a condition of probation, would earn six days' credit for each four actual days served, pursuant to former section 4019. Effective on January 25, 2010, section 4019 was amended to provide that certain classes of county inmates could earn conduct credits at an accelerated rate: four days' credit for each two days of actual custody. (Former § 4019, subds. (b)(1), (c)(1), (f); Stats. 2009, 3d Ext. Sess., ch. 28, § 50.) However, some classes of inmates would continue to earn credits at the old rate (i.e., they would be ineligible to earn at the enhanced rate), including any inmate who "has a prior conviction for a serious felony, as defined in section 1192.7." (Former § 4019, subds. (b)(2), (c)(2).)

Effective as of September 28, 2010, the Legislature amended section 4019 again, restoring the old six-for-four ratio of credits. The latest amendment also deleted the exclusion from credit-earning for inmates previously convicted of serious felonies. The amendments effective September 28, 2010, do not apply to the appeal in this case, however. Here, defendant committed his crime on July 24, 2010, after the effective date of the amendment of January 25, 2010, providing for enhanced credits, and before the

6

effective date of the amendment of September 28, 2010, restoring the old six-for-four ratio. (See current § 4019, subd. (g) ["The changes in this section as enacted by the act that added this subdivision shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after the effective date of that act"]; Stats. 2010, ch. 426, § 2, eff. Sept. 28, 2010.) Ostensibly, then, defendant was entitled to earn conduct credits at the enhanced rate, under the version of section 4019 in effect at the time he committed his crime, unless he came within an exception, such as a prior serious felony conviction as defined in section 1192.7.

B.    Trial Court Proceedings

As noted, in the interim between the plea and the date of the sentencing hearing, June 20, 2011, defendant's trial attorney had died. Another attorney "stood in" as defense counsel for purposes of the sentencing hearing.

In the meantime, the probation department had prepared a report for the sentencing hearing. The report outlined defendant's prior record, which included a 1991 felony conviction of Penal Code section 246.3, "Willful Discharge Firearm: Negligence"; a 1994 felony conviction of possession of a narcotic controlled substance (Health & Saf. Code, § 11350, subd. (a)); a 1996 felony conviction of unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c)); and a 2003 felony conviction of corporal injury to a spouse, cohabitant, or parent of a child (Pen. Code, § 273.5, subd. (a)). Defendant had been granted probation in two of these cases, but had performed poorly on probation; in both cases, defendant's probation was eventually revoked and he was committed to state prison. Defendant had also performed poorly on

7

parole, with several parole violations. Indeed, defendant had been discharged from parole on his 2003 offense on July 1, 2010, only about three weeks before he committed the current offenses.

The first hurdle defendant faced was his ineligibility for probation. Section 1203, subdivision (e), provides that, "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] . . . [¶] (4) Any person who has been previously convicted twice in this state of a felony . . . ." Defendant had been previously convicted of four felonies. The probation report noted that defendant was statutorily ineligible for probation, because of his four felony convictions, unless the court found it was an unusual case. Thus, honoring the plea bargain would require an order of the court.

At the hearing, the court did make the requisite finding: The court found, "under [California Rules of Court,] rule 4.413 subdivision (c)[(1)(A)], to justify probation in that the fact or circumstances giving rise to the limitation of probation is in this case substantially less serious than the circumstances typically present in other cases involving the same probation limitation and defendant has no re[c]ent record of committing similar crimes or crimes of violence to justify probation."

The probation report also contained notations with respect to the credits defendant would receive against his time in custody. In the list of defendant's prior offenses, a handwritten circle was drawn around the 1991 felony conviction for negligent discharge of a firearm (§ 246.3). The "Order of the Court" prepared by the probation officer listed the proposed terms of probation, including the 270 days in custody (term 1) that had been

8

negotiated. Term 1 stated: "Serve two hundred seventy (270) days in a San Bernardino County Jail Facility, with credit for time served, a matter of four (4) days, plus conduct credit pursuant to PC 4019, and abide by all rules and regulations of the facility without the possibility of county parole." This provision was interlineated by hand, as "plus conduct credits pursuant to PC ^old 4019," with a handwritten notation in the margin, that restricting conduct credits to the old rate was "based on 246.3 prior + Harvey waiver ¶ 15c." (See *People v. Harvey* (1979) 25 Cal.3d 754, 758 [court may consider dismissed charges for purposes of sentencing and restitution].) Presumably, the notation referred to paragraph 15c of defendant's change-of-plea agreement; defendant had initialed a provision stating: "15. . . . [¶] c. (*Harvey* **Waiver**) I waive my rights regarding dismissed counts and any charges the district attorney agrees not to file to the extent that the court may consider these factors in deciding whether or not to grant probation and in deciding whether or not to impose a midterm, aggravated, or mitigated prison term, and as to restitution."

After making the finding that probation should be granted, despite defendant's statutory ineligibility, the court then proceeded to the terms and conditions of probation. These included term 1, which required defendant to serve 270 days of custody in the county jail. As to that term, consistent with the handwritten notations on the probation report, the court indicated it would impose "old 4019 credits, and that will be based on the 246.3 prior conviction and the *Harvey* waiver on paragraph 15C."

The court ultimately did impose the agreed sentence of six years in state prison, suspended execution of the sentence, and granted supervised probation pursuant to the

plea bargain. The court recited that term 1 required defendant to "serve 270 days in San Bernardino county jail with credit for time served of four days plus old 4019 credits and abide by rules and regulations of the facility without the possibility of county parole."

Defendant stated on the record that he understood and accepted the terms of his probation. Defendant was immediately remanded into custody to begin serving his custody term.

A few weeks after beginning his custody service, defendant executed a notice of appeal, on July 28, 2011. That notice was filed with the court on August 18, 2011. Defendant's notice of appeal complained about the reduced accrual of conduct credits.

In preparation for assigning appellate defense counsel, the case was reviewed by an attorney at Appellate Defenders, Inc. (ADI). During the screening process, in preparation to assigning appellate counsel, the ADI attorney realized that the salient issue was the calculation of credits, and that delaying the matter for appeal could result in defendant serving "dead time," if the court viewed his claim as meritorious. To avoid the "dead time" problem, the ADI attorney deemed it prudent to bring the matter directly to the trial court's attention for prompt resolution. The ADI attorney therefore wrote directly to the trial court.

The ADI attorney's letter, dated October 14, 2011, noted, first, that the trial court must have treated defendant's prior conviction under section 246.3 as a serious prior felony in order to exclude defendant from earning conduct credits at the more favorable rate in effect at the time he committed his crime. Second, substitute defense counsel, who had stepped in for defendant's deceased trial attorney, most likely did not know that

10

the trial court intended to deny defendant the more favorable rate of custody credits. Third, defendant's *Harvey* waiver, on which the trial court also relied in denying the more favorable custody credits ratio, may have waived defendant's right to contest the use of counts dismissed or not charged with respect to the plea bargain, but a *Harvey* waiver does not apply to the use of prior convictions to affect sentencing. Finally, even if the trial court were to consider past convictions, rather than dismissed or unfiled charges, the record before the court did not demonstrate that the conviction it relied on—violation of section 246.3—was a serious felony. Under *People v. Golde* (2008) 163 Cal.App.4th 101, the reviewing court held that personal use of the firearm must be shown before a conviction under section 246.3 may be considered a serious felony. As in *Golde*, the record here was insufficient to establish the requisite personal use of the firearm with respect to defendant's conviction under section 246.3. Therefore, it could not qualify as a serious felony.

In response to the ADI letter, the court reviewed the matter on November 10, 2011, and stated in a minute order, "Perhaps an evidentiary hearing should be held [to determine] whether:

"1) The D.A. considered defendant's background in not filing a strike in exchange for the old 4019 credits.

"2) Whether the prior conviction of 246.3 is a strike

"3) Whether a requirement of 'pled and proven' exists

11

"Since there are so many issues the appeal process should continue. Defendant's request [i.e., to modify probation conditions to allow for earning of enhanced credits] is denied."

C. Merits of the Appeal: The Trial Court Erred in Denying Defendant the Ability to Earn Credits at the Enhanced Rate

Defendant urges that he is entitled to earn custody credits at the enhanced rate of four-for-two under the amended version of section 4019, which was in effect at the time he committed the charged offenses. He argues several points in favor of his contention. First, he maintains that the trial court improperly relied on his 1991 conviction under section 246.3, because that offense was not pleaded and proven as a basis for effectively increasing punishment. (See *People v. Lo Cicero* (1969) 71 Cal.2d 1186.) Second, the trial court's reliance on the old conviction as a reason to deny him eligibility to earn credits under the enhanced rate was improper, because the 1991 conviction was not shown on the record to qualify as a prior serious felony. Under *People v. Golde*, *supra*, 163 Cal.App.4th 101, a conviction under section 246.3 does not qualify as a serious felony unless the defendant is shown to have personally used a firearm in the commission of the offense. The record here was inadequate to show that defendant had personally used a firearm in the commission of his offense.

The People argue in response that no pleading and proof requirement applies to section 4019. Thus, the People argue, there was no need to specifically include an allegation in the complaint that defendant had suffered a prior serious felony conviction, in order for the court to find him ineligible to earn conduct credits at the enhanced rate.

12

However, the People acknowledge that a conviction under section 246.3 is not necessarily a serious felony; the People request a remand to determine whether or not the conviction constitutes a prior serious felony, so as to disqualify defendant from earning enhanced credits.

The California Supreme Court granted review in several cases dealing with the "pleading and proof" issue. (See, e.g., *People v. Voravongsa* (2011) 197 Cal.App.4th 657, rev. granted Aug. 31, 2011, S195672 [no pleading and proof requirement]; *People v. James* (2011) 196 Cal.App.4th 1102, rev. granted Aug 31, 2011, S195512 [same]; *People v. Jones* (2010) 188 Cal.App.4th 165, rev. granted Dec. 15, 2010, S187135 [pleading and proof required]; *People v. Lara* (2011) 193 Cal.App.4th 1393, rev. granted May 18, 2011, S192784 [same].)

Defendant contends that, in *People v. Lo Cicero*, *supra*, 71 Cal.2d 1186, the California Supreme Court concluded that the absolute denial of the opportunity for probation was equivalent to an increase in punishment; thus, the fact of a prior conviction, used to disqualify the defendant from eligibility for probation, must be pled and proven. However, the matter at issue in *Lo Cicero* was a statutory preclusion from eligibility for probation as a recidivist drug offender, under former Health and Safety Code section 11715.6 and Penal Code section 969. (*Lo Cicero*, at pp. 1191-1192.) *People v. Ford* (1964) 60 Cal.2d 772, an earlier case, also had recognized a pleading and proof requirement for enhancement allegations (i.e., that the defendant was armed with a deadly weapon at the time of the offense, or with a concealed weapon at the time of arrest), where such enhancements were the basis for increased penalties.

We incline to the view that pleading and proof of the prior serious felony conviction, such that it may be dismissed in the discretion of the court under section 1385, is not required with respect to a decision under section 4019, that an inmate is ineligible for or disqualified from earning conduct custody credits at the enhanced rate. The amendment to section 4019 was enacted as a fiscal emergency measure, and not primarily for the purpose of directly reducing punishment. In addition, the purpose of awarding custody credits is to give inmates some incentive for constructive behavior during incarceration. The statute affects incentive credits, and not the actual sentence. The provision for custody credits does not inevitably result in a reduction or amelioration of punishment, i.e., a reduction in the amount of time served. (See *People v. Brown* (2004) 33 Cal.4th 382, 405 ["section 4019, focuses primarily on encouraging minimal cooperation and good behavior by persons temporarily detained in local custody"]; *People v. Sage* (1980) 26 Cal.3d 498, 510 (conc. & dis. opn. of Clark, J.) ["The purpose of conduct credit is to foster good behavior and satisfactory work performance."]; *People v. Saffell* (1979) 25 Cal.3d 223, 233 ["The purposes of the provision for 'good time' credits seem self-evident. First, and primarily, prisoners are encouraged to conform to prison regulations and to refrain from engaging in criminal, particularly assaultive, acts while in custody. Second, [prisoners are induced] to make an effort to participate in what may be termed 'rehabilitative' activities."].) Such conduct credits are by no means guaranteed, and may be lost for refusal to work, or for engaging in bad behavior as determined by the institution. (Cf. *In re Rothwell* (2008) 164 Cal.App.4th 160, 165 [deprivation of credits is a sanction authorized for misconduct].)

*In re Varnell* (2003) 30 Cal.4th 1132, is instructive. There, the defendant was charged with possession of methamphetamine. The information further alleged that the defendant had suffered a prior strike conviction. The strike prior would have rendered the defendant ineligible for drug treatment under Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000). The defendant therefore asked the trial court to dismiss the prior strike allegation. The trial court did dismiss the strike allegation under section 1385, but nevertheless found that the fact of the prior conviction, and the resulting prison term, rendered the defendant ineligible for Proposition 36 treatment. (*Varnell*, at p. 1135.) The California Supreme Court ultimately affirmed the trial court's determination. Although section 1385 authorizes a trial court to "order an action [or a part thereof] to be dismissed," in the furtherance of justice (§ 1385, subd. (a)), dismissal of a prior conviction under section 1385 "'is not the equivalent of a determination that [the] defendant did not in fact suffer the conviction.'" (*People v. Garcia* (1999) 20 Cal.4th 490, 496.) Thus, even if a court dismisses a prior conviction allegation, "the [prior] conviction remains part of the defendant's personal history, and a court may consider it when sentencing the defendant for other convictions, including others in the same proceeding." (*Id*. at p. 499.) In *Varnell*, the California Supreme Court held that, "a trial court's power to dismiss an 'action' under section 1385 extends only to charges or allegations and not to *uncharged* sentencing factors, such as those that are relevant to the decision to grant or deny probation . . . or to select among the aggravated, middle, or mitigated terms. . . . [Proposition 36], . . . does not require that the basis for a defendant's ineligibility be alleged in the accusatory pleading. In the absence of a charge or

15

allegation, there is nothing to order dismissed under section 1385." (*Varnell*, at p. 1139.)

Eligibility for an enhanced rate of earning conduct credits is not a "charge" or an

"allegation" that must be included in an information or indictment. Therefore, a

disqualifying serious felony need not be pleaded and proved before the court may take

notice of a conviction, which "remains a part of the defendant's personal history." (*Id*. at

p. 1138.)

Defendant argues that *Varnell* is distinguishable from *Lo Cicero* and *Ford*,

because the matter at issue in *Varnell*—whether the defendant was eligible for

Proposition 36 probation—did not of itself preclude the defendant's eligibility for

probation under other provisions. In other words, there was no categorical exclusion

from probation, which would have amounted to an effective increase in the defendant's

punishment. The California Supreme Court found a pleading and proof requirement in

*Lo Cicero*, however, where the prior conviction resulted in an absolute bar from the

opportunity for probation, and thus effectively increased the defendant's punishment.

Defendant urges that the use of his prior felony conviction to disqualify him from earning

conduct credits at the enhanced rate is an absolute bar to that benefit, which otherwise

would have effectively decreased his punishment.

We disagree. In *Lo Cicero*, former Health and Safety Code section 11715.6

established an alternate punishment scheme for recidivist drug offenders, such that a

person convicted of a listed prior drug offense was categorically ineligible to be

considered for probation. At the time, Penal Code section 1203 provided generally that a

defendant was eligible to apply for probation in all felony cases, except in certain

16

substance abuse cases, if the defendant had suffered a prior felony conviction.  However, the court distinguished the preclusive effect of Health and Safety Code section 11715.6— ineligibility for probation—from a denial of probation "on the merits." (*People v. Lo Cicero*, *supra*, 71 Cal.2d at p. 1195.)  That is, even when a defendant is not statutorily barred from eligibility for probation, the eligibility for probation does not guarantee that probation will be granted.  But denial of probation—which effectively yields the same result as ineligibility for probation in the first instance—does not require the facts leading to the denial of probation to be pleaded and proved.  "In deciding whether [a] defendant should receive probation the trial judge may properly consider the probation report, including prior convictions appearing in that report but not charged in the pleadings." (*Id*. at p. 1195.)

No separate sentencing scheme absolutely prohibited defendant from eligibility to earn conduct credits at the enhanced ratio under the version of section 4019, which applied to defendant's case.  Rather, the trial court was called upon to decide whether defendant would or would not earn credits at the enhanced rate, in the same manner as it was called upon to decide whether or not to grant probation in the first instance.  The court could appropriately consider any prior felony conviction—which fully remained a part of defendant's personal history—in this case.  (*In re Varnell*, *supra*, 30 Cal.4th at p. 1138.)

Our analysis is now bolstered by the California Supreme Court's decision in one of the cases in which review was granted.  The court decided *People v. Lara* (2012) 54 Cal.4th 896, on July 19, 2012, holding that the historical facts of a particular defendant's

17

background, which might limit the defendant's ability to earn conduct credits, are not a part of the charges and allegations in a criminal pleading. (*Id.* at p. 901.) Thus, in this case, the court could properly consider defendant's prior felony convictions in determining the rate at which defendant was eligible to earn conduct credits. This conclusion does not, however, end the matter.

As defendant argues and as the People concede, defendant's personal history in this case, as it appeared before the trial court, did not establish that the prior conviction under section 246.3 constituted a disqualifying serious prior felony.

A violation of section 246.3 qualifies as a violent or serious felony if the defendant is found to have personally used a firearm. But, "[i]t is possible to be convicted of grossly negligent discharge of a firearm under section 246.3 without personally using a firearm, e.g., as an aider and abettor." (*People v. Golde*, *supra*, 163 Cal.App.4th at p. 112.) In *Golde* itself, the information alleged a prior conviction of violating section 246.3, and alleged it was a serious felony (strike). At a bifurcated hearing on the strike allegation, the defendant admitted on the record that he had suffered the conviction, but he did not admit that he had personally used the firearm. He did not admit that the conviction constituted a serious felony. The documents submitted by the prosecution did not establish that the defendant had personally discharged the firearm with respect to that offense. The Court of Appeal therefore ruled that there was insufficient evidence to show that the conviction was a prior serious felony. (*Id*. at p. 113.)

The People acknowledge that *Golde* is applicable, and that the record herein does not establish defendant's personal use of a firearm with respect to his section 246.3

18

conviction.  Thus, the record was inadequate to determine that the conviction constitutes a serious prior felony.  The People urge, therefore, that the matter be remanded to the trial court for a further inquiry, to determine whether it may be a serious or violent felony under sections 667.5 or 1192.7.  If, upon further inquiry, the trial court should determine that the offense is not a serious prior felony, then defendant's conduct credits should be recalculated.  The People refer to *Monge v. California* (1998) 524 U.S. 721 for the proposition that the matter should be remanded for the purpose of determining whether a prior conviction is a serious or violent felony.

Defendant counters that *Monge* is inapplicable, because the defendant in that case had been placed on notice in the charging pleading of prior serious felony and prior prison term allegations.  After a court trial, the allegations were found true.  On appeal, the Court of Appeal had found that the evidence was insufficient to prove the strike and serious felony allegations, and had also ruled that the double jeopardy clause precluded retrial.  (*Monge v. California*, *supra*, 524 U.S. 721, 724-726.)  The United States Supreme Court ultimately decided that the double jeopardy clause does not apply to noncapital sentencing proceedings, so that remand for a retrial on the strike and serious felony allegations of the complaint was permissible.  (*Id*. at p. 724.)

Here, by contrast, there was never any allegation made or notice given to defendant that his prior conviction would be considered for any purpose.  There was no trial on the matter at all, and no evidence presented.  Defendant complains that remand to revisit the issue would give the prosecution an unfair "'two bites of the same apple.'"  The People have conceded that the present record is deficient to establish that the prior

19

conviction constitutes a proper disqualifying serious prior felony. That deficiency is attributable to the prosecution's failure to exercise due diligence in making its case. It cannot be presumed that the offense is a serious felony. Without a remand, defendant may obtain a benefit, but "only because [the People] chose not to carry its burden originally. . . . [O]n the other hand, a remand [may] give[] a windfall to [the People], i.e., the opportunity to prove (if they can) what they forfeited originally (or waived in any discussions with [deceased attorney] Wade, whom [defendant] cannot call.)"

However, we discern no reason why the matter should not be remanded for reconsideration. If the section 246.3 conviction cannot be shown to constitute a serious prior felony, then defendant will be eligible for and will be granted the enhanced conduct credits. On the other hand, if the prior conviction actually does constitute a disqualifying serious felony, defendant will be no worse off than he is now; in addition, he will have notice and an opportunity to present a defense on the issue, which is the gist of his complaint here.

Accordingly, we will order the matter remanded for further proceedings, to permit the trial court to determine whether the prior conviction on which it relied to deny enhanced credits does or does not constitute a serious prior felony, i.e., whether or not defendant personally used a firearm in the commission of the offense.

### DISPOSITION

The trial court's order at sentencing, that defendant is limited to earning conduct credits under Penal Code section 4019 at the old rate, is reversed. The matter is remanded for further proceedings, to permit the trial court to determine whether

20

defendant's prior conviction under Penal Code section 246.3 constitutes a serious prior felony, so as to disqualify him from receiving the more favorable credit accrual rate under the version of Penal Code section 4019 in effect at the time of his offense.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

MILLER

J.

CODRINGTON

J.

21