Filed 11/2/21  P. v. Chambers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARSHAWN DEDRICK CHAMBERS,<br><br>        Defendant and Chambers. | A159908<br><br>(Alameda County<br>Super. Ct. No. 18-CR-020085A) |

Upon leaving an illegal gambling establishment, defendant Marshawn Dedrick Chambers was captured on video firing numerous shots at a group of men who had followed him and his companion outside onto the street. One man died, another one was seriously injured, and a bystander, who had been asleep on the sidewalk, was shot in the foot. A jury convicted Chambers of voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)), attempted voluntary manslaughter (§§ 192, subd. (a), 664), assault with a semiautomatic firearm (§ 245, subd. (b)), and possession of a firearm by a felon (§ 29800, subd. (a)(1)). On appeal Chambers contends his convictions for voluntary manslaughter, attempted voluntary manslaughter, and assault with a semiautomatic firearm must be reversed because they are not supported by

_____

[1] All further undesignated statutory references are to the Penal Code.

1

substantial evidence and the trial court failed to instruct the jury sua sponte on involuntary manslaughter. We reject these contentions and affirm.

## BACKGROUND

### A. Charged Offenses

On May 3, 2019, the Alameda County District Attorney filed a multi-count information against Chambers.[2] Count one charged Chambers with the murder of Xin Hoang (§ 187, subd. (a)). Count two charged Chambers with the attempted murder of Tam Huynh (§§ 187, 664). Count three charged Chambers with assaulting Tam Huynh with a semiautomatic firearm (§ 245, subd.(b)). Count four charged Chambers with assaulting Linda Johnson with a semiautomatic firearm (§ 245, subd. (b)). Count five charged Chambers with possession of a firearm by a felon (§ 29800, subd. (a)(1)).

The information specially alleged that Chambers personally discharged a firearm causing great bodily injury and death to Xin Hoang (counts one and two) (§§ 12022.7, subd. (a), 12022.53, subds. (b)-(d), 12022.5, subd. (a). and that he personally used a firearm, causing great bodily injury to Tam Huynh and Linda Johnson, counts three and four, respectively. (§§ 1203.06, subd.(a)(1), 12022.5, subd. (a)).

### B. Evidence at Trial

#### 1. *Possible Robbery of the 11th Avenue Gambling Shack*

On the evening of August 26, 2018, Tam Huynh was working as the manager of an illegal gambling shack located at 1110 International Boulevard and 11th Avenue (11th Avenue gambling shack) in Oakland. A patron at the shack named "Deezy" thought that Chambers and another

---

[2] Anthony Le was also charged as a codefendant; Le's case was subsequently severed.

2

young Black man were going to rob the place. The young men, who had been at the shack for about 30 minutes, were not regular customers, but they were polite and did nothing to call attention to themselves.

2.      *Assistance from the 7th Avenue Gambling Shack*

Deezy went to another illegal gambling shack, located on 7th Avenue, where he told security guard Gilbert Berena that "he seen somebody that has a gun, and he thinks . . . that place [the 11th Street shack] is about to get robbed." Berena, along with Anthony Le and Xin "Timmy" Hoang, who were at the 7th Avenue location, accompanied Deezy to the 11th Avenue shack to investigate the possible robbery.

3.      *Investigation at the 11th Avenue Shack*

Upon arriving at the 11th Street shack, Berena and his three companions approached Huynh and asked if he was okay and if someone had tried to rob the shack. Berena told Huynh, "Somebody might have a weapon or a gun inside your spot." Huynh responded that "everything looked okay," and that no one was trying to rob the shack. Huynh testified that Berena and his companions had "some temper. Kind of young and screaming a little bit." "They walked back and forth and talked loudly." Tina Addi, a patron at the 11th Avenue shack on the night in question, testified that the four men definitely appeared to be under the influence of methamphetamine.

Berena announced to everyone in the shack that he would start searching the customers for weapons. He heard someone respond, "[Y]ou are not going to search me," or "I don't want to be searched," in a calm tone of voice. Berena told Chambers and his friend that weapons were not allowed inside the shack, and that they would have to put any guns in their vehicle. Chambers responded that "he didn't want any problems and he was leaving."

### 4.    *Events Outside the 11th Avenue Shack*

The jury viewed surveillance footage from both inside and outside the 11th Avenue shack recorded on the night in question, which depicts the ensuing events.[3]

Chambers and his friend left the shack without incident. Berena, Le, Hoang, and Deezy followed them outside. Addi testified that she saw Hoang walk out with a pole tucked up the sleeve of his jacket, while Le held a gun behind his back. Huynh followed the four men and told them to return to the shack.

The outside surveillance cameras showed Chambers and his companion walking along International Boulevard away from the shack with Berena, Le, Hoang, and Deezy following closely behind. As his companion continued walking, Chambers stopped on the sidewalk, turned and waited for Berena, Le, Hoang, and Deezy to approach. Huynh testified that he heard Le challenge Chambers, by saying words to the effect of, "You came here to play. You try to do something. Why don't you show me." Chambers then pulled "his shirt up and took out a gun" and fired numerous gunshots while running. Hoang immediately fell to the ground. As Huynh turned away to hide, Chambers shot him in the stomach and leg. Le returned fire with his gun, while Berena and Deezy fled.

Bystander Linda Johnson, who was shot in the foot during the melee, did not testify at trial, but body camera footage of her statement on the night of the offense was played for the jury. Johnson, who was homeless, said that she had been sleeping on the sidewalk and did not see what happened, she only "heard it."

---

[3] We have reviewed this footage.

After Chambers fled, Berena brought Hoang to the hospital, where he was pronounced dead as a result of a single gunshot wound to the head. Evidence technicians recovered ten .45 caliber shell casings and seven .40 caliber shell casings from the crime scene.

## C.    Jury Instructions

The jury was instructed with the CALCRIM Homicide Series, including justifiable homicide–self-defense or defense of another (CALCRIM No. 505); second degree murder with malice aforethought in violation of section 187 (CALCRIM No. 520); voluntary manslaughter on theories of heat of passion (CALCRIM No. 570) and imperfect self-defense (CALCRIM No. 571); attempted murder (CALCRIM No. 600); attempted voluntary manslaughter on theories of heat of passion (CALCRIM No. 603) and imperfect self-defense (CALCRIM No. 604). The jury was instructed it could not convict Chambers of both attempted murder (count two) and assault with a semiautomatic weapon (count three) (CALCRIM No. 3516). The jury was also instructed as to the assaultive offenses (CALCRIM No. 875), weapons charges (CALCRIM No. 2511), enhancements (CALCRIM Nos. 3146, 3148, 3149, 3160), and defenses (CALCRIM Nos. 3470, 3471, 3472, 3474. Chambers did not request an instruction on a lesser included offense of involuntary manslaughter. (CALCRIM No. 580.)

## D.    Verdict and Sentencing

On October 21, 2019, the jury returned its verdicts. The jury acquitted Chambers of Hoang's murder, but convicted him of the lesser included offense of voluntary manslaughter (count one) (§ 192, subd. (a)). The jury acquitted Chambers of the attempted murder of Huynh, but convicted him of the lesser included offense of attempted voluntary manslaughter (count two) (§§ 192, subd. (a), 664). As to both counts one and two, the jury found the associated

5

enhancement allegations to be true. Chambers was acquitted of the assault with a semiautomatic firearm as to Huynh (count three). He was convicted of assaulting Johnson with a semiautomatic firearm and possession of a firearm by a felon (counts four and five, respectively).

The trial court struck the great bodily injury enhancements and, on January 24, 2020, sentenced Chambers to state prison for the total determinate term of eight years eight months.

## DISCUSSION

Chambers seeks reversal, contending that his convictions for voluntary manslaughter, attempted voluntary manslaughter, and assault with a semiautomatic firearm are not supported by substantial evidence. He argues he lacked the mens rea necessary to support his voluntary manslaughter and attempted voluntary manslaughter convictions and that there is no evidence that he fired the shot that injured Johnson. He also challenges the trial court's failure sua sponte to instruct the jury on involuntary manslaughter.

## I. Substantial Evidence Supports the Convictions

### A.    Standard of Review

In evaluating Chambers's claims, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] . . . A reversal for insufficient evidence 'is unwarranted unless it appears "that

6

upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, italics omitted.)

As to the mens rea element, the California Supreme Court has explained that " '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.] Moreover, the standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence. 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" [Citation.] "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

**B.    The Law of Homicide**

We address Chambers's claims in the context of the law of homicide. A justifiable or excusable killing is not criminal. (*People v. Elmore* (2014) 59 Cal.4th 121, 132 (*Elmore*).) Murder is the unlawful killing of a human being with malice aforethought, which may be express or implied. (*Ibid.*) Express malice is " 'a deliberate intention unlawfully to take away the life of a fellow creature.' " (*Ibid.*) Implied malice occurs when "an unlawful killing results from a willful act, the natural and probable consequences of which are

7

dangerous to human life, performed with conscious disregard for that danger." (*Id.* at p. 133.) "Thus, the mens rea required for murder is malice, express or implied." (*Ibid.*)

Manslaughter, a lesser included offense of murder, "is an unlawful killing without malice" (*Elmore, supra,* 59 Cal.4th at p. 133) and may be voluntary, involuntary, or vehicular (*ibid.*).

"Two factors may preclude the formation of malice and reduce murder to voluntary manslaughter: heat of passion and unreasonable self-defense. [Citations.] Heat of passion is recognized by statute as a mitigating factor. [Citation.] Unreasonable self-defense is founded on both statute and the common law." (*Elmore, supra,* 59 Cal.4th at p. 133.) In contrast to voluntary manslaughter, involuntary manslaughter is a killing that occurs during the commission of "an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).)

*1.     Mens Rea of Voluntary Manslaughter*

Voluntary manslaughter is a lesser included offense of murder. (*People v. Thomas* (2012) 53 Cal.4th 771, 813.) A defendant commits voluntary manslaughter when a homicide that is committed either with intent to kill (express malice) or with conscious disregard for life (implied malice)—and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter by heat of passion or imperfect self-defense. (*People v. Bryant* (2013) 56 Cal.4th 959, 968 (*Bryant*).)

Intent to kill or express malice "may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Notably, our Supreme Court has found that "the act of purposefully firing a lethal weapon at another human being at close range,

without legal excuse, generally gives rise to an inference that the shooter acted with express malice." (*Id.* at p. 742; see *People v. Lashley* (1991) 1 Cal.App.4th 938, 945 ["very act of firing a .22-caliber rifle toward the victim at a range and in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill"]; *People v. Jackson* (1989) 49 Cal.3d 1170, 1201 ["the very act of firing a shotgun toward" victim at a short distance "would permit an inference of intent to kill from the manner of killing"]; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224–1225 [firing six shots at victims at distance of 25 feet indicated clear intent to kill]; *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 ["act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill' "].)

The term "conscious disregard for life" is shorthand for the mens rea of implied malice. (*Bryant, supra,* 56 Cal.4th at p. 968.) Malice is implied "when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (*People v. Cook* (2006) 39 Cal.4th 566, 596.) The conscious disregard element " 'requires the jury to question [the defendant's] subjective thoughts while committing the crime.' " (*People v. Benson* (1989) 210 Cal.App.3d 1223, 1229.) The defendant must have a "knowing or conscious appreciation of the risk to human life" created by his or her conduct and must disregard that risk. (*Ibid.*) However, ill will towards the victim is not required, and conscious disregard may exist even if the death was accidental in the sense the defendant did not intend to kill anyone. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 103, 110 ["Even if the act results in a death that is accidental,

as defendant contends was the case here, the circumstances surrounding the act may evince implied malice."]; *People v. Swain* (1996) 12 Cal.4th 593, 603 [intent to cause death not required].)

Conscious disregard for life can readily be inferred when the circumstances show the defendant's conduct just before the fatal act was so highly dangerous to human life that virtually no one would be unaware of the risk. (See *People v. Thomas* (2012) 53 Cal.4th 771, 814–815 [putting gun to victim's head is highly dangerous and exhibits a conscious disregard for life]; *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1263 [substantial evidence of implied malice based on defendant's act, even in jest, of pointing gun at girlfriend and cocking hammer back, knowing gun was loaded].)

### 2. *Mens Rea of Attempted Voluntary Manslaughter*

Attempted voluntary manslaughter is a lesser included offense of attempted murder. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137 ["the offense of attempted murder is reduced to the lesser included offense of attempted voluntary manslaughter when the defendant acted upon a sudden quarrel or in the heat of passion"]; see *People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708–709.)

Attempted voluntary manslaughter, like attempted murder, requires a specific intent to kill; a conscious disregard for life will not suffice. (*People v. Lasko* (2000) 23 Cal.4th 101, 107; *People v. Bland* (2002) 28 Cal.4th 313, 327–328; *People v. Gutierrez, supra,* 112 Cal.App.4th at p. 710.)  However, "a person who intends to kill can be guilty of attempted murder even if the person has *no specific target in mind.*" (*People v. Stone* (2009) 46 Cal.4th 131, 140, italics added.) For example, a person who "indiscriminately fires a single shot at a group of persons with specific intent to kill *someone,* but without targeting any particular individual or individuals, . . . is guilty of a single

10

count of attempted murder." (*People v. Perez* (2010) 50 Cal.4th 222, 225; *Stone,* at p. 141.) In other words, "[a]n indiscriminate would-be killer is just as culpable as one who targets a specific person." (*Stone,* at p. 140.)

## C. Substantial Evidence Supports the Voluntary Manslaughter Conviction

As to the murder charge, the jury was instructed on second degree murder (§ 187; CALCRIM No. 520) and the lesser included offense of voluntary manslaughter (§ 192, subd. (a)) under theories of heat of passion (CALCRIM No. 570) and imperfect self-defense (CALCRIM No. 571). The jury acquitted Chambers of murder and convicted him of voluntary manslaughter.

Chambers argues his voluntary manslaughter conviction must be reversed because there was insufficient evidence he acted with malice, that is, an intent to kill or a conscious disregard for life. In particular, he claims the "wild nature of the shots fired" demonstrated that "he did not engage in any deliberative thought before he fired his gun randomly" toward the group of men who had followed him and his friend.

The video surveillance footage belies Chambers's claim that he fired without "any deliberative thought." The video shows Chambers stopped and turned to face the men on the sidewalk as his companion walked away. Berena and Huynh testified that they heard someone challenge Chambers before he pulled out his gun and began firing numerous shots at them. The video surveillance footage confirms that after Hoang fell onto the street, Chambers continued to fire shots at the other men as they sought cover. Viewing this evidence in the light most favorable to the verdict, a rational trier of fact could have reasonably inferred that Chambers repeatedly fired his gun with intent to kill or conscious disregard for life.

Chambers argues he did not have the requisite mental state because he "did not appreciate the likely consequences of his actions as he merely

11

reacted with no time for conscious consideration of the likely outcome of his decision." We are hard-pressed to find how Chambers could not be subjectively aware that firing multiple gunshots at a group of people was highly dangerous to human life. His attempt to recast his actions as accidental is not supported by the record. Substantial evidence supports the voluntary manslaughter conviction.

## D.   Substantial Evidence Supports the Attempted Voluntary Manslaughter Conviction

The jury acquitted Chambers of attempted murder and assault with a semiautomatic weapon but convicted him of the attempted voluntary manslaughter of Huynh.

Chambers argues there is no "evidence whatsoever" that he intended to kill Huynh. He adds that if the evidence established that he "intended to shoot anyone in particular . . . firing wildly as he ran from the crowd of men who were pursuing him, it showed [he] likely intended to shoot Anthony Le."

 Contrary to Chambers's contention, his conviction of attempted manslaughter does not require substantial evidence of his *specific intent to kill Huynh*. (See *Stone, supra,* 46 Cal.4th at p. 140 [defendant need not have a "specific target in mind"].) It is clear from the record that Chambers indiscriminately, or using his words "wildly," fired successive shots at a group of people. This evidence was sufficient for the jury to find that Chambers had an intent to kill *someone*. That he may not have targeted Huynh does not make him any less culpable.

Chambers argues that the jury's acquittal on the assault charge "is a clear indication" that he lacked the intent to kill needed to support an attempted voluntary manslaughter conviction. This argument is premised on a fundamental misunderstanding of the crimes charged and the associated verdicts. In CALCRIM No. 3516 the jury was instructed: "The defendant is

12

charged in Count 2 with Attempted Murder, a violation of Penal Code section 664/187 and in Count 3 with Assault with a Semiautomatic Firearm, a violation of Penal Code section 245(b). These are alternative charges. If you find the defendant guilty of one of these charges, you must find him not guilty of the other. You cannot find the defendant guilty of both."

That the jury acquitted Chambers of assault with a semiautomatic weapon demonstrates that the jury followed CALCRIM No. 3516, not that the jury found he lacked the mental state for attempted voluntary manslaughter. The evidence overwhelmingly supports the jury finding that Chambers acted with a specific intent to kill when he fired numerous shots at Huynh and the other men on the sidewalk and its guilty verdict on count 2, for attempted voluntary manslaughter conviction.

## E. Substantial Evidence Supports the Assault with a Semiautomatic Firearm Conviction

Chambers contends that there is insufficient evidence to support his conviction for assaulting Linda Johnson with a semiautomatic firearm because there is no evidence that he was the person who shot her.

### 1. *Applicable Law*

The elements of assault with a deadly weapon are: (1) the defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) the defendant did the act willfully; (3) when he or she did so, the defendant was aware of facts that would lead a reasonable person to realize his or her act would result in the application of force to someone; and (4) the defendant had the present ability to apply force with the deadly weapon. (§§ 240, 245, subd. (a)(1); *People v. Golde* (2008) 163 Cal.App.4th 101, 120–123.)

Assault with a deadly weapon does not require "a specific intent to injure a particular victim . . . . [B]ecause the law seeks to prevent the

13

wrongful application of physical force upon the victim 'irrespective of any actual purpose to cause it,' the mens rea element of assault is established by proof of general criminal intent. [Citation.] . . . [T]he pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm" directed at a specific victim. (*In re Tameka C.* (2000) 22 Cal.4th 190, 198.)

> 2. *Analysis*

Chambers argues his conviction of assault with a deadly weapon against Johnson is not supported by substantial evidence because Johnson did not see who shot her. He contends "there were numerous shots fired by multiple weapons" and Johnson was "hit by a stray bullet." Accordingly, he asserts "[t]here is no evidence that it was Chambers who fired the shot that injured Ms. Johnson." We disagree.

The evidence, viewed as a whole, supports Chambers's conviction. At trial, the prosecutor established that the 11th Avenue gambling shack was located at 1110 International Boulevard. The prosecutor also established that Linda Johnson was shot in front of 1124 International Boulevard. Additionally, the parties stipulated that People's Exhibit 1, the surveillance video of the shooting, was taken from 1106 International Boulevard. Viewing all this evidence in the light most favorable to the verdict, a rational trier of fact could have reasonably concluded that as Chambers walked past 1106 International Boulevard, he turned and fired his weapon back toward victims Hoang and Huynh, who were closer to 1110 International Boulevard. Further, a rational trier of fact could have reasonably inferred that one of Chambers's gunshots continued past 1110 International Boulevard and struck Johnson as she sat at 1124 International Boulevard. Conversely, a rational trier of fact could have reasonably concluded that Anthony Le fired

14

his gun toward Chambers at 1106 International Boulevard, and away from Johnson. Substantial evidence therefore supports Chambers's conviction of assault with a semiautomatic firearm.

Even crediting Chambers's shootout scenario, we find no difficulty in upholding his conviction for this offense. As the California Supreme Court indicated in *In re Tameka C.,* the crime of assault with a deadly weapon does not require a specific intent to injure a particular victim. (*In re Tameka C., supra,* 22 Cal.4th at p. 198.) "[A] defendant need not intend to strike any particular person to be guilty of an assault, and it is therefore irrelevant whether the defendant strikes his intended victim or another person." (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1737.) Here, there was no evidence that Chambers accidentally discharged his firearm; the evidence established that he willfully and repeatedly fired his gun into a group of people on a public sidewalk. Any reasonable person would realize that injury to people on the sidewalk was likely to occur as a direct, natural, and probable result of the act of shooting a semiautomatic weapon in a public space.

The reasonable inferences from the testimony and the surveillance video indicate Chambers was aware his act of firing a semiautomatic weapon, in close proximity to a group of people on a public sidewalk, would by its nature probably and directly result in the application of physical force against another. Nothing more is required. (See *People v. Williams* (2001) 26 Cal.4th 779, 790.) The challenged conviction of assault with a semiautomatic firearm, relating to Johnson, is supported by substantial evidence.

## II. The Trial Court Did Not Have a Sua Sponte Duty to Instruct the Jury on Involuntary Manslaughter

An instruction on involuntary manslaughter as a lesser included offense was notb requested by Chambers and was not given. Chambers now

contends the trial court had a sua sponte duty to instruct the jury on involuntary manslaughter as a lesser included offense of murder because there was substantial evidence that he killed Xin Hoang without malice. The record does not support that claim, and we find no error. A defendant cannot commit involuntary manslaughter where he or she acts with an intent to kill or conscious disregard for life. (See *People v. Blakeley* (2000) 23 Cal.4th 82, 91 (*Blakeley*).) As we show above, there was overwhelming evidence and the jury found as to count one either that Chambers had an intent to kill or a conscious disregard for life and, as to count two, an intent to kill. Further, even if we were to find error based on the failure to give the involuntary manslaughter instruction, we would nonetheless affirm because any error was harmless.

## A. Applicable Law

### 1. Sua Sponte Duty

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' [Citation.] Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403.) "[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) Conversely, even on request, a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction. (*Ibid.*) "We review the trial court's failure to instruct on a lesser included offense de novo [citations] considering the evidence in the light most

favorable to the defendant." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30 (*Brothers*).)

### 2. *Mens Rea of Involuntary Manslaughter*

California treats involuntary manslaughter as an unintentional killing caused by criminal negligence. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 423 ["[i]nvoluntary manslaughter, when not misdemeanor manslaughter, is criminally negligent unlawful homicide"]; see also CALCRIM No. 580 [involuntary manslaughter requires criminal negligence]; *People v. Penny* (1955) 44 Cal.2d 861, 879 [a "lack of 'due caution and circumspection'" means " 'criminal negligence' "]; accord *People v. Evers* (1992) 10 Cal.App.4th 588, 596.)

The intentional use of violent force against a victim, knowing the probable consequences of one's actions, precludes an instruction on involuntary manslaughter. (See *People v. Evers, supra,* 10 Cal.App.4th at p. 598 [court was not required to instruct jury on involuntary manslaughter where defendant intentionally used violent force against victim knowing the probable consequences of his action]; see also *People v. Hendricks* (1988) 44 Cal.3d 635, 643 [involuntary manslaughter is an unintentional killing]; *People v. Guillen* (2014) 227 Cal.App.4th 934, 1027–1028 [instruction on involuntary manslaughter not warranted when defendants knew the risk involved to victim when they violently attacked him].)

In the context of brandishing a firearm, an unintentional shooting can be murder if the defendant acted in conscious disregard of life and the act was dangerous to human life. (*People v. Thomas* (2012) 53 Cal.4th 771, 814–815.) In the scenario of brandishing a firearm, a defendant is guilty of involuntary manslaughter only if the shooting was accidental and the defendant acts without malice. (*Id.* at p. 815.) In contrast, a defendant is

guilty of voluntary manslaughter if he or she unlawfully kills in unreasonable self-defense with the intent to kill or with conscious disregard for life. (*Blakeley, supra,* 23 Cal.4th at p. 91.)

Chambers relies on *Brothers*, *supra*, 236 Cal.App.4th 24 to support his claim of error for failure to give the involuntary manslaughter instruction sua sponte. *Brothers* concluded that "an instruction on involuntary manslaughter as a lesser included offense must be given when a rational jury could entertain a reasonable doubt that an unlawful killing was accomplished with implied malice during the course of an inherently dangerous assaultive felony." (*Id.* at p. 34.)

However, *Brothers* concluded that when a defendant "indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter. (See *People v. Cook* (2006) 39 Cal.4th 566, 597 ['[Defendant] savagely beat Sadler to death. Because the evidence presented at trial did not raise a material issue as to whether defendant acted without malice, the trial court was not obliged, on its own initiative, to instruct the jury on involuntary manslaughter as to victim Sadler.']; [Citation]. Otherwise, an involuntary manslaughter instruction would be required in every implied malice case regardless of the evidence." (*Brothers, supra,* 236 Cal.App.4th at p. 35.)

## B. Analysis

Chambers argues the trial court should have instructed on involuntary manslaughter because, in finding him guilty of voluntary manslaughter rather than murder, the jury necessarily concluded he acted without malice.

As we explain *ante,* there was abundant evidence that Chambers "indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life." (*Brothers, supra,* 236 Cal.App.4th at p. 35.) Therefore the court had "no sua sponte duty to instruct on involuntary manslaughter." (*Ibid.*)

The surveillance video graphically supports our conclusion. Four men followed Chambers and his friend as they walked away from the gambling shack. Chambers paused, turned to face the men and shot Hoang at close range. He continued firing even after Hoang fell to the ground. The evidence indisputably refutes any claim that Chambers fired his weapon accidentally or that he was unable to appreciate the consequences of his actions. This was not a case where the victim's death resulted from an unlucky blow. (See *People v. Cook* (2006) 39 Cal.4th 566, 597.) Instead, there was a high probability Chambers's actions would result in death.

Finally, even if we were to determine that the jury should have been instructed on involuntary manslaughter, we would conclude the error was harmless. There is currently a debate in the Courts of Appeal whether prejudice for instructional error on a lesser included offense should be reviewed under the federal standard articulated in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) or under the state standard articulated in *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Wright* (2015) 242 Cal.App.4th 1461, 1495, fn. 14 [noting disagreement].) We need not resolve this issue. Instead, based on this record, we conclude that any

19

presumed instructional error here was harmless beyond a reasonable doubt, satisfying the more stringent federal standard of review. (See *Chapman,* at p. 24.) The evidence refutes any claim that Chambers shot Hoang accidentally. Moreover, the jury found true the enhancement that Chambers personally used a firearm during the commission of this crime (§ 12022.5). To find this enhancement true, the jury was instructed that Chambers must have intentionally displayed the firearm in a menacing manner, and hit someone with it or fired it. Based on its true finding, the jury found that Chambers intentionally fired his gun, negating any claim of an accidental discharge.

On this record, we can declare beyond a reasonable doubt that any presumed instructional error was harmless. (*Chapman, supra*, 386 U.S. at p. 24.)

## DISPOSITION

The judgment is affirmed.

                               _____

                               Ross, J.[*]

WE CONCUR:


_____

Pollak, P.J.


_____

Brown, J.


*A159908 People v. Chambers*

---

[*] Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.